NO
CV
30

1  Timothy A. Loranger, Esq. Bar No. 225422
2  tloranger@baumhedlundlaw.com
   Mark Schlein, FL Bar No. 000700
3  mschlein@baumhedlundlaw.com
   *(Pro Hac Vice to be submitted)*
4  Baum Hedlund Aristei & Goldman, P.C.
   10940 Wilshire Blvd., 17th Floor
5  Los Angeles, CA 90024
   Tel:  310-207-3233
6  Fax.  310-820-7444

7  *Attorneys for Relator Anthony Innabi*



FILED
CLERK, U.S. DISTRICT COURT

APR 26 2021

CENTRAL DISTRICT OF CALIFORNIA
BY                          DEPUTY

FEE
PAID

8            UNITED STATES DISTRICT COURT

9            CENTRAL DISTRICT OF CALIFORNIA

10                   WESTERN DIVISION

11  UNITED STATES OF AMERICA            CIVIL ACTION NO.

12  AND THE STATE OF CALIFORNIA     CV21-3619-CAS (MARx)

13  *ex rel.* ANTHONY INNABI,

14      PLAINTIFFS AND RELATOR,        **FALSE CLAIMS ACT**
                                       **COMPLAINT AND DEMAND**
15          v.                         **FOR JURY TRIAL**

16  JULIAN OMIDI, MIRALI ZARRABI       **FILED IN CAMERA AND**
    SURGERY CENTER MANAGEMENT,         **UNDER SEAL PURSUANT TO**
17  LLC, INDEPENDENT MEDICAL           **31 U.S.C.  3730(b)(2)**
    SERVICES, INC., 1 800 GET THIN,
18      DEFENDANTS.                    **DO NOT PLACE IN PRESS BOX**
                                       **DO NOT ENTER ON PACER**

19

20        Anthony Innabi (hereinafter RELATOR) brings this action on behalf of the

21  United States of America ("United States") for treble damages and civil penalties

22  arising from the conduct of Julian Omidi, Mirali Zarrabi (hereinafter referred to as

23  "DEFENDANTS"), Surgery Center Management, LLC (hereinafter referred to as

24  "SCM"), Independent Medical Services, Inc. (hereinafter referred to as "IMS"), and 1

25  800 Get Thin (hereinafter referred to as ("GET THIN") in violation of the Federal Civil

26  False Claims Act, 31 U.S.C. § 3729, et seq. ("FCA").  The violations arise out of false

27  claims for payment made to Tricare and other federally funded government healthcare

28  programs including the State of California's Medi-Cal program (hereinafter collectively

                        1            FALSE CLAIMS ACT COMPLAINT

005078

referred to as the "GOVERNMENT") for GET THIN's Lap-Band (or bariatric) surgery and related sleep study programs.  This action is also brought under the *qui tam* provisions of the False Claims Act of California.

# I.     BACKGROUND

1.      Each year in the United States, the Government spends millions of dollars on lap band and related bariatric weight loss surgeries and sleep studies.

2.      Laparoscopic adjustable gastric banding (LAGB), widely known as lap band surgery, is a surgical procedure that involves the placement of an adjustable belt around the upper portion of the stomach using a laparascope.

3.      The band is made of silicone and can be tightened by adding saline to fill the band (like blowing air into a doughnut-shaped balloon).  The band is connected to a port that is placed under the skin of the abdomen.  This port is used to introduce or remove saline into the band.

4.      LAGB ultimately restricts the size of the stomach and the amount of food it can hold.  It also slows the passage of food to the intestine.  By doing so, signals to the brain from the gut allow for a sensation of fullness and satiety with the consumption of less food.

5.      Tricare and other government health care programs will cover Lap-Band Surgery if medical proof can be shown that weight loss is necessary because of illnesses - co-morbidities - associated with the patient's obesity.  These include medical problems such as **sleep apnea**, hypertension, diabetes and other conditions.

6.      Defendants have defrauded government healthcare programs of millions of dollars through false and fraudulent billings both for falsified and medically unnecessary sleep apnea tests, related lap band surgeries and continuous positive airway pressure (CPAP) machines.

7.      As alleged herein, for years Defendants caused thousands of false claims to be made on federal and state health care programs.  The resulting false claims caused

the government to pay out funds that they otherwise would not have paid and unlawfully enriched Defendant.

## II.    FEDERAL JURISDICTION AND VENUE

8.    The acts proscribed by 31 U.S.C. § 3729 *et seq.* and complained of herein occurred in the state of California within the Central District of California.  Since the acts alleged in this complaint were committed in this district, this Court has jurisdiction over this case pursuant to 31 U.S.C. § 3732 (a), as well as under 28 U.S.C. §1345.

9.    Defendant Omidi, a former doctor, resides in Los Angeles within the Central District of California.

10.    Defendant Zarrabi is a medical doctor who resides in Los Angeles within the Central District of California.

11.    GET THIN was a limited liability company operating primarily in Beverly Hills, California, within the Central District of California.

12.    SCM was a limited liability company registered in the State of California, operating in Beverly Hills, California, within the Central District of California.

13.    IMS was a professional corporation registered in the State of California, operating primarily in Beverly Hills, California, within the Central District of California.

14.    Venue is proper in this District pursuant to 31 U.S.C. § 3732(a) and 28 U.S.C. § 1391 because Defendants are located in and do virtually all their business in the Central District of California and many of the acts and omissions proscribed by 31 U.S.C. §3729 *et seq.,* occurred in the Central District of California.

15.    This court has jurisdiction over the subject matter of this action pursuant to 31 U.S.C. § 3732(a) and 28 U.S.C. § 1331 and has personal jurisdiction over the Defendants because they reside in and do business in the Central District of California.

16.    Although the facts and circumstances alleged in this complaint have now been publicly disclosed in a pending criminal case in the Central District of California and in the news media, the Relator is the "original source" of the information upon

which the government's criminal case and media coverage is based, as that term is used in the False Claims Act.[1]

## III.   PARTIES

17.   The United States funds the provision of medical care through Government Healthcare Programs such as TRICARE/CHAMPUS, Medicare, Medicaid, Federal Employees' Health Benefits Program, CHAMPVA, and other agencies and programs, acting through the Centers for Medicare & Medicaid Services ("CMS") within the U.S. Department of Health and Human Services ("HHS"), the Department of Defense, and other federal agencies.

18.   The State of California funds the provision of medical care to its low income and elderly citizens through a variety of programs including Medi-CAL.

19.   Relator Anthony Innabi is a citizen of the United States and a resident of the State of California.  Relator has personal knowledge of the allegations made in this complaint.  Relator has multiple post graduate degrees and 16 years of experience as a Respiratory Care Practitioner which includes polysomnography (sleep studies), testing and treatment.  He was formerly an employee of Classic Sleep Care.

20.   Defendant Omidi is a former doctor who, in large part, controlled the operation of GET THIN, SCM and ISM.  Omidi is the ringleader of the scheme.

21.   Defendant Zarrabi is a medical doctor licensed in California (license # A64722).  Dr. Zarrabi, whose license is currently under restriction, is a principal participant and facilitator of the scheme.

---

[1] The FCA was amended effective in July 2010 to provide as follows: (B) For purposes of this paragraph, "original source" means an individual who either (i) prior to a public disclosure under subsection (e)(4)(a), has voluntarily disclosed to the Government the information on which allegations or transactions in a claim are based, or (2) who has knowledge that is independent of and materially adds to the publicly disclosed allegations or transactions, and who has voluntarily provided the information to the Government before filing an action under this section.  [Emphasis supplied.]

22.     SCM was a limited liability company registered in the State of California, operating in Beverly Hills, California, within the Central District of California. Beginning in or about February 2010, defendant SCM was a part of the GET THIN organization and assisted in the management of several GET THIN surgery centers. SCM was a main participant in the fraud scheme.

23.     IMS was a professional corporation registered in the State of California, operating primarily in Beverly Hills, California, within the Central District of California.  Beginning in or about April 2010 and continuing to at least in or around December 2015, IMS maintained a sleep study program within the GET THIN organization to obtain sleep studies for patients who came to GET THIN seeking Lap - Band surgery.  SCM was a main participant in the fraud scheme.

24.     GET THIN was owned and/or controlled by Omidi and was a main participant in the fraud scheme.

## IV.     INDIVIDUAL PARTICIPANTS

25.     Elizabeth Tietjen, Vice President, Operations, Classic Sleep Care.  Relator believes Tietjen was primarily responsible for assuring that patients who were referred by Get Thin to Classic Sleep Care for durable medical equipment received the prescribed CPAP machines in a timely manner.  Tietjen was Relator's supervisor at Classic Sleep Care.

26.     Pamela Villasenor was a Territory Sales Manager for Classic Sleep Care. Villasenor helped recruit physicians who wrote prescriptions for apnea related durable medical equipment and was their liaison with the company.  The doctors she interacted with referred a high volume of patients from the GET THIN network to Classic Sleep Care for CPAP machines.

27.     Classic Sleep Care, LLC was a durable medical equipment supplier for apnea related equipment.  It was located at 30851 Agoura Road, Agoura Hills, CA 91301 and Relator believes it is no longer in business.

## V.    THE FALSE CLAIMS ACT

28.    The False Claims Act (hereinafter referred to as "FCA"), 31 USC § 3729, was originally enacted in 1863, and was substantially amended in 1986 by the False Claims Amendments Act, Pub.L. 99-562, 100 Stat. 3153.  The FCA was further amended in May 2009 by the Fraud Enforcement and Recovery Act of 2009 ("FERA") and again in March 2010 by the Patient Protection and Affordable Care Act ("PPACA").  Both FERA and PPACA made a number of procedural and substantive changes to the FCA in an attempt to ease the burden on the government and Relators in investigating and prosecuting *qui tam* suits under the FCA.

29.    The False Claims Act generally provides that any person who knowingly presents, or causes to be presented, false or fraudulent claims for payment or approval to the United States Government, or knowingly makes, uses, or causes to be made or used false records and statements material to a false claim, or conspires to engage in such conduct, is liable for a civil penalty ranging from $11,665 up to $23,331 for each such claim, plus three times the amount of the damages sustained by the Federal Government.

30.    The Act allows any person having information about false or fraudulent claims to bring an action for himself or herself and the Government, and to share in any recovery.  Based on these provisions, Relator seeks, through this action, to recover all available damages, civil penalties, and other relief for the state and federal violations alleged herein.

31.    The California False Claims Act allows for any person having information about false or fraudulent claims resulting in the expenditure of state funds to bring a civil action in his/her/their own name or in the name of the state.

## VI.    FEDERAL HEALTHCARE PROGRAMS

32.    In 1965, Congress enacted Title XVIII of the Social Security Act (known as "Medicare" or the "Medicare Program") Medicare is the nation's health program for persons over 65 and the disabled.  Medicare is funded by the Federal Government.  to

pay for the cost of certain medical services, care, supplies and equipment. Entitlement to Medicare is based on age, disability or affliction with certain diseases. See 42 U.S.C. §§1395 to 1395ccc. Outpatient prescription drugs are covered under Parts A-D of the Medicare Program.

33.   Congress passed the Dependents Medical Care Act of 1956 and the Military Medical Benefits Amendments of 1966. These acts allowed the Secretary of Defense to contract with civilian health care providers and created a civilian health care which program became known as the Civilian Health and Medical Program of the Uniformed Services ("CHAMPUS") in 1966. CHAMPUS, which is now known as "TRICARE," is a health care program of the United States Department of Defense Military Health System. Tricare, which is the civilian care component of the Military Health System, provides civilian health benefits for U.S Armed Forces military personnel, military retirees, and their dependents, including some members of the Reserve Component.

34.   Under the Medicare Act, 42 U.S.C. § 1395y(a)(1)(A), there is an express fundamental condition of payment: "no payment may be made [under the Medicare statute] for any expenses incurred for items or services which . . . are not reasonable and necessary for the diagnosis or treatment of illness or injury." This condition links each Medicare payment to the requirement that the particular item or service be "reasonable and necessary." Tricare, Medicaid and other federally funded programs restrict coverage under the same principle.

35.   Tricare, Medicare, Medicaid and the other federally funded programs require the submission of documented and properly coded claims which include the implied or express representation that the medical equipment or supplies were provided and were medically necessary.

## VII.   SUBSTANTIVE ALLEGATI ONS

36.   In or about October 2011, Relator provided Blue Cross Blue Shield fraud regulators with the original information that was the basis for the Government's

subsequent health care fraud investigation which resulted in the indictment, arrest and ongoing criminal prosecution of the defendants.  As a result of this investigation, and prior to the indictment and arrest of the defendants,  the government  seized  over  one hundred million dollars ($100,000,000) in assets from the defendants.

37.    Relator worked as a Respiratory Therapist and Territory Manager at Classic Sleep Care in Agora Hills, California from December 2010 until January 2014. His job responsibilities included interviewing patients, reviewing their medical records, preparing a continuous positive airway pressure (CPAP) machine calibrated for the individual patient and educating the patient on the use of the device.

38.    CPAP delivers air pressure through a mask while you sleep. The air pressure is somewhat greater than that of the surrounding air and is just enough to keep your upper airway passages open, preventing apnea and snoring.  When medically necessary, CPAP machines are reimbursed by government health care programs.

39.    A patient's need for a CPAP machine, along with a completed sleep study, are prerequisites for the authorization and reimbursement of lap band surgery.

40.    From December 2010 until December 2011 hundreds of patients were referred to Classic Sleep Care by GET THIN for a CPAP machines.  Relator discovered that a large number of the CPAP machines that had been prescribed by doctors associated with Get Thin were medically unnecessary and that the results of underlying sleep studies had been falsified.

41.    In order to be reimbursed for lap band surgery by government and private health insurers, an obese person must have certain medical conditions - co-morbidities - that can be improved by reducing body weight.  These include sleep apnea and diabetes.

42.    If a sleep study concluded that a patient suffered from moderate to severe sleep apnea, a CPAP machine was prescribed.

43.    Dr. Zarrabi was paid by Omidi to sign falsified Get Thin sleep studies which claimed that patients had moderate to severe sleep apnea.  Dr. Zarrabi

electronically signed the sleep studies without reviewing them and knowing that they were routinely falsified.

44.    Doctors associated with Get Thin were paid by Omidi for signing hundreds of bogus prescriptions for medically unnecessary CPAP machines.

45.    The falsified sleep study reports and medically unnecessary CPAP prescriptions were sent to durable medical equipment providers such as Classic Sleep Care, that provided the CPAP machine to the patient and billed the government for CPAP machines which, in many cases, were medically unnecessary.

46.    GET THIN used the falsified sleep study reports and a patient's false need for a CPAP machine to support its claim that the patient had moderate or severe sleep apnea, and thereby justify its pre-authorization requests for Lap-Band surgery.

47.    Diagnosing sleep apnea and the need for a CPAP machine normally involves overnight monitoring at a sleep center of a patient's breathing and other body functions during sleep.  During this sleep study the patient is hooked up to equipment that monitors their heart, lung and brain activity, breathing patterns, arm and leg movements, and blood oxygen levels while sleeping.

48.    After personally speaking to many patients that had been referred to Classic Sleep Care by Get Thin and reviewing their records, Relator discovered that the results of many of these sleep studies had been falsified by the defendants.  For example, a patient's height and weight were routinely changed to make them appear more seriously obese and many Get Thin sleep studies were not properly conducted.

49.    Classic Sleep Care frequently waived a patient's co-pay or co-insurance when a patient was hesitant to pay any money out of pocket for a CPAP machine.  This waiver was in itself improper under government healthcare rules.

50.    Relator recognized that Get Thin was involved in a serious healthcare fraud scheme which included falsifying sleep study results and prescriptions for CPAP machines in order to bill for medically unnecessary lap band surgery.

51.     In or about October 2011, Relator reported the fraud scheme he discovered to Blue Cross Blue Shield (BCBS) fraud investigators via their online hotline.  This was followed by an in person meeting in or about October / November 2011with BCBS fraud investigator Cheryl Simmons.  Relator discussed the fraud scheme with Simmons and gave her more than fifty falsified patient studies to support his allegations.  This meeting was held at the BCBS office in Woodland Hills, California.

52.     Relator was advised by Simmons that his information would be shared with government regulators and investigated.  Relator was puzzled and disappointed that he was not contacted by BCBS or any other government regulator to follow up his complaint.  He concluded that BCBS and the government felt that his information did not justify further investigation.

53.     In or about November 2017, Relator was contacted by FBI Special Agent Mark Coleman.  Agent Coleman was accompanied by a female FBI special agent (name unknown) who took notes.  The meeting was held at the California Hospital Medical Center in downtown Los Angeles where Relator was working as the manager of the hospital's respiratory therapy department.

54.     Agent Coleman told Relator that the meeting was about the information he had provided to BCBS in 2011.  Agent Coleman said he did not know why no action had been taken on Relator's original complaint.  He told Relator that a major investigation was now being conducted based in large part on the information he had originally provided.

55.     At Agent Coleman's request, Relator gave him copies of the patient files he had previously given to BCBS.

56.     As a result of this investigation, in or about January 24, 2018, the United States filed an indictment against the defendants charging them with multiple crimes based on GET-THIN's falsified Lap-Band surgeries and sleep study programs occurring between May 2010 and March 2016.

57.     As originally reported by the Relator in 2011, the indictment alleges that falsified sleep studies and CPAP prescriptions were used by GET THIN to support the pre-authorization requests needed to obtain reimbursement for both sleep studies and Lap-Band surgery.

58.     In or about February 2021, Agent Coleman told Relator that arrests had been made on the case and that he would be needed as a witness at trial.  He asked if Relator would be willing to meet with AUSA Kristen Williams, the federal prosecutor on the case.  Relator agreed and said he would cooperate completely.

59.     In or about the last week of February 2021, Agent Coleman met with Relator at his house to further discuss the upcoming trial.  They again discussed the fraud scheme and the files which the Relator would be questioned about at the trial.

60.     In or about March 1, 2021, Relator participated in a "Zoom" meeting with AUSA Williams and Agent Coleman.  Williams discussed how the Relator discovered the fraud scheme, including the particular information in the patient files that made him suspicious that fraud was occurring.  AUSA Williams ended the meeting by telling Relator that he would be contacted about the date, time and location of the trial.

61.     The government alleges that GET THIN billed at least $250,000,000 for fraudulent bariatric procedures and was actually paid about $38 million for the Lap-Band procedures.

62.     Even if the Lap-Band surgery was not ultimately authorized, GET THIN still submitted bills for approximately $15,000 for each sleep study, receiving millions of dollars in payments for these false claims.

63.     In addition, patients' health was put at risk when they were subjected to unnecessary medical procedures.

64.     The health care programs that were falsely billed include TriCare, Anthem Blue Cross, UnitedHealthcare, Aetna, Cigna and others.

65.     The following is a sample of patient files Relator provided to BCBS and federal fraud investigators:

11                    FALSE CLAIMS ACT COMPLAINT

- AH / 11/22/1988
- GD / 7/7/1983
- VR / 12/19/1974
- EV / 4/18/1973
- CH / 4/5/1957
- WN / 2/6/1978
- JW / 7/17/1957
- MR / 10/24/1981
- SP / 10/3/1981
- BM / 11/10/1961
- LV / 9/17/1973
- BR / 3/11/1943
- TM / 7/20/1971
- AM / 11/10/1984
- JJ / 12/2/1976
- MC / 11/24/1959
- EY / 10/18/1976
- CH / 12/6/1961
- GP / 11/22/1978
- TF / 12/17/1973
- KM / 9/3/76
- EM / 11/27/1980
- TJ / 1/21/1986
- MDA / 7/22/1959
- EL / 5/14/1975
- BC / 12/1/78
- SR / 6/30/1975
- RR / 8/22/1975
- YS / 2/5/1976
- FD / 12/7/1962
- CF / 10/11/1950
- RS / 5/31/1975
- SP / 10/9/1970
- MD / 12/20/1968
- TG / 4/19/1977
- JN / 5/22/1973
- LR / 6/9/1987
- BM / 9/22/1974
- GSC / 5/15/1972

FALSE CLAIMS ACT COMPLAINT

- RL / 2/5/1984
- MR / 5/31/1980
- LW / 8/1/1977
- MM / 6/14/1973
- AO / 2/22/1990
- MA / 10/11/1970
- CH / 4/5/1957
- DK / 10/26/1967
- JY / 2/14/1959
- RC / 9/24/1972
- ZH / 6/14/1980
- DB / 11/10/1960

## VIII. CAUSES OF ACTION

### COUNT I

**FALSE CLAIMS ACT**
**FALSE CLAIM FOR PAYMENT OR APPROVAL**
**31 S.C. § 3729(a)(1)(A) and (C) (2010)**

66.    Relator repeats and realleges each allegation contained in paragraphs 1 through 65 above as if fully set forth herein.

67.    This is a claim for treble damages and penalties under the False Claims Act, 31 U.S.C. § 3729, *et seq*., as amended. Defendant, by and through its officers, agents, employees, and attorneys, knowingly presented, or caused to be presented, a false or fraudulent claim for payment or approval in violation of 31 U.S.C. § 3729(a)(1)(A)(2010).

68.    Defendant, by and through its officers, agents, and employees, authorized and encouraged the actions of its various officers, agents, and employees to take the actions set forth above.

69.    As a result of these acts of Defendants, the United States Government reimbursed the Defendants millions of dollars for false and fraudulent billings for medically unnecessary lap band surgeries, related sleep studies, and C Pap machines that it otherwise would not have paid.

70.     Every statement, billing and claim for payment submitted to the federal health insurance programs for procedures which were not performed, procedures which were overbilled, medically unnecessary or otherwise fabricated represents a false or fraudulent claim for payment.

71.     By reason of Defendant's acts, the United States and the State of California have been damaged in a substantial amount to be determined at trial.  Federal and California health insurance programs have paid millions of dollars for bariatric procedures and durable medical equipment that they otherwise would not have paid for but for Defendants fraudulent and illegal conduct.

72.     As set forth in the preceding paragraphs, Defendant has knowingly violated 31 U.S.C. § 3729 et seq. and have thereby damaged the United States Government.  The United States is entitled to three times the amount by which it was damaged, to be determined at trial, plus a civil penalty of as much as the law allows for each false claim submitted, approved and paid.

WHEREFORE, Relator respectfully requests this Court enter judgment against Defendant, as follows:

(a)     That the United States be awarded damages in the amount of three times the damages sustained by the United States because of the false claims alleged within this Complaint, as the Federal Civil False Claims Act, 31 U.S.C. § 3729 *et seq.* provides.

(b)     That civil penalties of $23,331 be imposed for each and every false claim that Defendant caused to be presented to the Government Healthcare Programs under the Federal False Claims Act.

(c)     That pre- and post-judgment interest be awarded, along with reasonable attorneys' fees, costs, and expenses which the Relator necessarily incurred in bringing and pressing this case.

(d)     That the Relator be awarded the maximum amount allowed pursuant to the Federal False Claims Act; and

(e)     That the Court award such other and further relief as it deems proper.

## COUNT II

**FALSE CLAIMS ACT**
**FALSE RECORDS OR STATEMENTS**
**31 .S.C. § 3729(a)(1)(B) and (C) (2010)**

73.     Relator repeats and realleges each allegation contained in paragraphs 1 through 65 above as if fully set forth herein.

74.     This is a claim for treble damages and penalties under the False Claims Act, 31 U.S.C. § 3729, et seq., as amended.

75.     As set forth in the preceding paragraphs, Defendants fraudulently billed the government for medically unnecessary lap band surgeries and related sleep studies that it otherwise would not have paid by getting false and/or fraudulent claims submitted to TriCare and other Government health care programs.

76.     Defendant, by and through its officers, agents, and employees, authorized and encouraged the actions of its various officers, agents, and employees to take the fraudulent actions set forth above and get government health care claims paid in violation of 31 U.S.C. § 3729(a)(1)(C) (2010).

77.     As a result of the acts of Defendant the United States Government reimbursed Defendant for services that it otherwise would not have paid.

78.     Every statement, billing and claim for payment submitted to the federal health insurance programs for each and every vascular procedure not performed, overbilled or medically unnecessary represents a false or fraudulent statement.

79.     By reason of Defendant's acts, the United States has been damaged, and continues to be damaged, in a substantial amount to be determined at trial.

80.     As set forth in the preceding paragraphs, Defendant has knowingly violated 31 U.S.C. § 3729 *et seq*. and has thereby damaged the United States Government.  The United States is entitled to three times the amount by which it was damaged, to be determined at trial, plus a civil penalty of not less than $11,665957 and not more than $23, 331 for each false claim submitted, paid or approved.

WHEREFORE, Relator respectfully requests this Court enter judgment against Defendant, as follows:

    (a)    That the United States be awarded damages in the amount of three times the damages sustained by the U.S. because of the false claims alleged within this Complaint, as the Federal Civil False Claims Act, 31 U.S.C. § 3729 *et seq.* provides.

    (b)    That civil penalties of $23,331 be imposed for each and every false claim that Defendant(s) caused to be presented to the Government Healthcare Programs under the Federal False Claims Act.

    (c)    That pre- and post-judgment interest be awarded, along with reasonable attorneys' fees, costs, and expenses which the Relator necessarily incurred in bringing and pressing this case.

    (d)    That the Relator be awarded the maximum amount allowed pursuant to the Federal False Claims Act; and

    (e)    That the Court award such other and further relief as it deems proper.

## COUNT III

### CALIFORNIA  FALSE CLAIMS ACT
### Cal. Gov't Code §§ 12651(a)(1) and (2) and §12652

81.    Relator, acting in the name of and on behalf of the State of California, restates and realleges each and every allegation contained in paragraphs 1 through 65 above as if each were stated herein in its entirety and said allegations are incorporated herein by reference.

82.    This is a claim for treble damages and penalties under the California False Claims Act.

83.    By virtue of the acts described herein, Defendant, for the purpose of defrauding the California State Government, knowingly presented, or caused to be presented false or fraudulent claims for payment or approval under Medi-Cal and other

California State funded programs, and made, used and caused to be made and used false records and statements material to false claims.

84.  Each claim for payment for bariatric procedures and sleep studies falsely billed, not prescribed, not delivered or not medically necessary or more expensive than the ordered item represents a false or fraudulent claim for payment.

85.  Each claim for payment that contained false, inaccurate or deceptive billing codes or other false statements constitutes a false or fraudulent claim because such false claims are not covered by the California Medicaid program and other State health care programs.

86.  The State of California, by and through the California Medicaid program and other State health care programs, was unaware of the falsity of the records, statements and claims made or caused to be made by the Defendant and paid claims that would not be paid but for Defendant's wrongful actions and omissions.

87.  As a result, California state monies were lost through payments made in respect of the claims and other costs were sustained by the California State Government.

88.  Therefore, the California State Government has been damaged in an amount to be proven at trial.

89.  Additionally, the California State Government is entitled to the maximum penalty of $11,000 for each and every false and fraudulent claim made and caused to be made by Defendant and arising from Defendant's conduct as described herein.

90.  Relator is a private citizen with direct and independent knowledge of the allegations of this Complaint, who has brought this action pursuant to Cal. Gov't Code § 12652(c) on behalf of herself and the State of California.

91.  This Court is requested to accept pendant jurisdiction over this related state claim as it is predicated upon the same exact facts as the federal claim, and merely asserts separate damages to the State of California in the operation of its Medicaid program.

WHEREFORE, Relator respectfully requests this Court enter judgment against Defendant, as follows: That the State of California be awarded damages in the amount permitted by law:

    (a)    That civil penalties of $11,000 be imposed for each and every false claim that Defendant caused to be presented to the State's Medicaid or other Government Healthcare Programs under the California False Claims Act.

    (b)    That pre- and post-judgment interest be awarded, along with reasonable attorneys' fees, costs, and expenses which the Relator necessarily incurred in bringing and pressing this case.

    (c)    That the Relator be awarded the maximum amount allowed pursuant to the California False Claims Act; and

    (d)    That the Court award such other and further relief as it deems proper.

WHEREFORE, Relator respectfully requests this Court enter judgment against Defendant, as follows: That the State of California be awarded damages in the amount permitted by law:

    (a)    That civil penalties of $10,000 be imposed for each and every violation of California Labor Code § 1102.5.

    (b)    That Relator receive as partial damages her lost wages, lost benefits, lost vacation, lost opportunities and lost sick leave; and

    (c)    That pre- and post-judgment interest be awarded, along with reasonable attorneys' fees, costs, and expenses which the Relator necessarily incurred in bringing and pressing this case.

    (d)    That Relator receive punitive damages as permitted by law.

    (e)    That the Court award such other and further relief as it deems proper.

/ / /

/ / /

/ / /

/ / /

    FALSE CLAIMS ACT COMPLAINT

# DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of Federal Rules of Civil Procedure, Plaintiffs and Relator hereby demand a trial by jury.

Dated: April __15__, 2021                    BAUM HEDLUND ARISTEI & GOLDMAN, P.C.

By: _____

Timothy A. Loranger, Esq., Bar No. 225422
tloranger@baumhedlundlaw.com
Mark Schlein, Trial Counsel, FL Bar No. 0000700
mschlein@baumhedlundlaw.com
BAUM HEDLUND ARISTEI & GOLDMAN, PC
10940 Wilshire Blvd., 17th Floor
Los Angeles, CA 90024
Tel:  310-207-3233   Fax: 310-207-4204

*Attorneys for Relator*

19                        FALSE CLAIMS ACT COMPLAINT

FedEx®
press
Extremely Urgent
ORIGIN ID:SMOA (310) 207-3233
GARY BROWN
BAUM HEDLUND ARISTIE & GOLDMAN
10940 WILSHIRE BLVD.
17TH FLOOR
LOS ANGELES, CA 90024
UNITED STATES US
SHIP DATE: 23APR21
ACTWGT: 1.00 LB
CAD: 100551585/INET4340
BILL SENDER
TO CLERK OF THE COURT
U.S. DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
350 W 1ST STREET, SUITE 4311
LOS ANGELES CA 90012
(213) 894-1565 REF: COURT DOCUMENTS
INV
PO DEPT
FedEx Express
E
MON - 26 APR 4:30P
STANDARD OVERNIGHT
TRK# 0201 7735 3862 9133
WZ EMTA
90012
CA-US LAX
R1 705 1 16:30 9133 04.26
FZ
RECEIVED
CLERK U.S. DISTRICT COURT
APR 26
CENTRAL DISTRICT OF
BY
Insert shipping document here.
FedEx Ship Manager - Print Your Label(s)
4/23/2021



